IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| NATHAN SAMUEL POLAKOFF,<br><br>Petitioner,<br><br>vs.<br><br>AUSTIN KNUDSEN, ATTORNEY GENERAL FOR THE STATE OF MONTANA; ALEX NIXON, CARBON COUNTY ATTORNEY,<br><br>Respondents. | Cause No. CV 22-94-BLG-SPW<br><br><br>ORDER |

This matter comes before the Court on Petitioner Polakoff's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Polakoff faces a second trial in Montana's Twenty-Second Judicial District, Carbon County. He asserts a double jeopardy violation and seeks to prevent the State of Montana from retrying him. (*See generally* Doc. 1.) The matter is currently scheduled for trial on January 23, 2023. For the reasons set forth below, the petition will be denied.

I.    **Facts and Procedural Background**

The following facts were outlined by the Montana Supreme Court during recent supervisory control proceedings:

> This case arises from injuries suffered by nine-month-old E.M., the minor child of R.W., which occurred at Polakoff's residence. On April 17, 2019, R.W. and E.M. were staying at Polakoff's house when E.M. reportedly rolled

off a futon onto a carpeted floor, a drop of between 6- to 12-inches, sustaining a red mark on the side of his head. R.W. noticed that E.M. had also vomited. The next day, April 18, 2019, E.M. was lethargic and unable to keep food down so R.W. took him to the Beartooth Billings Clinic where E.M. was seen by a physician's assistant who believed E.M. had the flu. However, on April 19, 2019, E.M. again vomited and Polakoff offered to clean E.M. up in the shower. While Polakoff and E.M. were alone and in the bathroom, Polakoff called to R.W. that E.M. had stopped breathing. An ambulance and Red Lodge Police Department responded and observed E.M. was alive but in severe distress. He appeared lifeless and was struggling to breathe. During transport to Billings Beartooth Clinic, E.M. suffered a seizure.

E.M.'s treating physician, Dr. Fouts, determined that emergency transport to Salt Lake City was necessary. Dr. Fouts also concluded that rolling off the futon onto a carpeted floor could not have caused such a serious injury. Dr. Laskey, E.M.'s treating physician at Salt Lake City, disclosed that E.M. had suffered two skull fractures from two separate, recent events. Dr. Laskey testified that the fracture on the side of E.M.'s head was not as severe as the fracture on the back of E.M.'s skull, which was a complex stellated skull fracture resulting from severe blunt force. Dr. Laskey testified that after sustaining the severe skull fracture on the back of his head, E.M. would have exhibited signs of severe injury and not appeared normal in any way. Dr. Laskey explained that while a person can sustain two fractures from one impact, E.M.'s fractures were not connected and there was no plausible trauma mechanism that could have caused both of E.M.'s fractures with one impact. Dr. Laskey testified that the physician assistant could not have ruled out a skull fracture on April 17, 2019, without an x-ray, which was not taken because E.M.'s symptoms were not serious at that point. Dr. Laskey explained that persistent vomiting, such as what was displayed April 17 and 18, was a symptom of a less serious skull fracture.

On May 1, 2019, the State charged Polakoff with two counts of assault on a minor in violation of § 45-5-212, MCA. In Count I, the State alleged the offense occurred "on or about" April 17, 2019; in Count II, the State alleged the offense occurred "on or about" April 19, 2019. On March 1, 2022, the State filed an Amended Information. It amended Count I to allow the jury to find that Polakoff's assault resulted in E.M.'s serious bodily injury or, alternatively, bodily injury. In Count II, the State alleged E.M. sustained

serious bodily injury. The District Court conducted a jury trial on March 8-10, 2022. The jury found Polakoff not guilty on Count I and was unable to reach a verdict on Count II. Without objection, the District Court declared a mistrial and scheduled trial on the remaining count, Count II, for August 22, 2022. On April 22, 2022, Polakoff filed a motion to dismiss Count II on double jeopardy grounds, which was denied by the District Court on June 22, 2022.

Polakoff argues that State's use of "on or about" means that there is three days of "wiggle room" on either side of the offense committal date listed in the information. Thus, Polakoff argues, because the language of the charging documents alleged the offenses were committed "on or about" April 17, 2019, and April 19, 2019, the two charges necessarily merged into one because of the three overlapping days. Because Polakoff was acquitted of Count I, he argues further prosecution on Count II would constitute double jeopardy. The State maintains that the two counts are distinct and separate, and that the Dr. Laskey's testimony supported the commission of two offenses. The District Court concluded that Polakoff's argument was a "technical one," which must fail. The District Court explained that the "second assault could not have occurred any time before April 18, as the Affidavit clearly claims that it occurred after E.M. was provided care on April 18. The first assault would have to have occurred before this medical visit." Thus, the District Court concluded that the two counts are distinct in nature, which the jury clearly understood when it differentiated between the charges and acquitted Polakoff of Count I.

*Polakoff v. Montana Twenty-Second Jud. Dist. Ct.*, OP 22-0349, 2022 WL

2817537, at *1–2 (Mont. July 19, 2022).

The Montana Supreme Court ultimately denied Polakoff's writ of

supervisory control, seeking to reverse the district's court's denial of his motion to

dismiss. The Court first noted that in Montana, a mistrial following a hung jury

does not terminate the original jeopardy that attached. *Id.* at *2 (citations omitted).

The Court was not persuaded by Polakoff's argument that the jury's acquittal on

Count I effectively served as an acquittal on Count II. The Court noted there was evidence presented at trial that E.M. suffered more than one serious skull fracture and that the two fractures did not occur from the same singular blunt force impact. *Id.* The Court also observed that the initial skull fracture was less severe and E.M. did not exhibit immediate signs of injury, while the latter and more serious fracture resulted in devastating signs of head injury. *Id.* Further, the State presented evidence that E.M. suffered the more serious skull fracture on April 19, 2019, and the severity of the injuries distinguished that injury from the injury that occurred on April 17, 2019. *Id.* The Court noted the lower court found the more serious assault could not have occurred before the April 18, 2019 medical visit, because the physician assistant did not observe head injury symptoms that would require x-rays. *Id.* Based upon these findings, the Court determined Polakoff's acquittal on Count I did not preclude the State from continuing prosecution of Polakoff on Count II, which is based upon allegations of an April 19, 2019, assault. Dr. Laskey's opinion that the more serious skull fracture would have been immediately apparent and would have cause unconsciousness, like that displayed on April 19, 2019, supported the decision. *Id.*

## II.   Polakoff's Claims for Relief

As he did in the state courts, Polakoff argues before this Court that he was put in jeopardy for the April 19, 2019, offense by the charge of which he was

acquitted, involving the same crime against the same victim- that was alleged to have occurred "on or about April 17, 2019." In essence, Polakoff argues that Count I encompassed Count II. He states his argument is "not about the mistrial of Count II" and concedes that the State would be able to retry him on Count II if the conduct charged in Count I had not encompassed Count II. Polakoff argues Count II is multiplicitous of Count I and the events were part of the same transaction. *See e.g.*, (Doc. 1 at 2, 11-12.) That is, Polakoff believes the two assault charges involve a single victim, arise from ambiguous and indistinguishable conduct in violation of the same statute, and there was no conclusive evidence to establish separate conduct or separate injuries. *Id.* at 12-13. In support of his position, Polakoff asserts that the State's use of the phrase "on or about" essentially subsumed the two counts into each other, and without distinct injuries or distinct conduct, two crimes have been charged for the same offense. *Id.* at 15-18.

### III.   Analysis

The writ of habeas corpus protects "individuals against erosion of their right to be free from wrongful restraints upon their liberty." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963). Habeas claims brought by a state pretrial detainee are considered under 28 U.S.C. § 2241, rather than 28 U.S.C § 2254. *See e.g. Stow v. Murashige*, 389 F. 3d 880, 885-88 (9th Cir. 2004); *Wilson v. Belleque*, 554 F. 3d 816, 821-24 (9th Cir. 2009). Pursuant to this statute, a petitioner may seek habeas

5

relief if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c) (3). The deference afforded to state courts by 28 U.S.C. § 2254 under the Antiterrorism and Effective Death Penalty Act ("AEDPA") is not applicable to Section 2241 cases. Therefore, claims brought under Section 2241 are reviewed *de novo*, even when they have been adjudicated on the merits by the state courts. *See Wilson*, 554 F. 3d at 828.

The Double Jeopardy Clause of the Fifth Amendment states that "[n]o person shall…be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend V.[1] The prohibition against double jeopardy protects against (1) a "second prosecution for the same offense after acquittal"; (2) a "second prosecution for the same offense after conviction:' and (3) "multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). The Double Jeopardy Clause, however, is "not an absolute bar to successive trials." *Justs. Of Bos. Mun. Ct. v. Lydon*, 466 U.S. 294, 308 (9184). Reprosecution is not barred by the Clause when a jury fails to reach a verdict or a defendant successfully appeals his conviction on a ground other than sufficiency of the evidence. *See Yeager v. United States*, 557 U.S. 110, 118 (2009)(*citing Richardson v. United States*, 468 U.S. 317, 323 (1984). In either of these two

---

[1] The Double Jeopardy Clause was incorporated against the states in *Benton v. Maryland*, 395 U.S. 784 (1969).

circumstances the reprosecution of the defendant is considered a continuation of the original jeopardy. *See Yeager*, 557 U.S. at 118.

Polakoff concedes that the jury's failure to reach a verdict on Count II is a sufficient basis for his reprosecution and does not offend double jeopardy. Rather, as explained above, he argues the charges filed against him were multiplicitous in nature. This Court acknowledges the Double Jeopardy Clause prohibits the imposition of "multiple trials, convictions and punishments for the same offense." *United States v. Arlt*, 252 F. 3d 1032, 1035 (9th Cir. 2001)(en banc); *see also United States v. Chilaca*, 909 F. 3d 289, 291 (9th Cir. 2018)("The Double Jeopardy Clause of the Fifth Amendment protects against multiple criminal punishments for the same offense.").

"An indictment is not multiplicitous merely because it charges more than one violation of the same statute based on related conduct; instead, a defendant can be convicted of multiple violations of the same statute if the conduct underlying each violation involves a separate and distinct act." *United States v. Technic Serv., Inc.*, 314 F. 3d 1031, 1046 (9th Cir. 2002), *overruled on other grounds by United States v. Contreras*, 593 F. 3d 1135 (9th Cir. 2010). Conversely, "[a]n indictment is multiplicitous when it charges multiple counts for a single offense, thereby resulting in two penalties for one crime and raising double jeopardy concerns." *United States v. Mancuso*, 718 F. 3d 780, 791 (9th Cir. 2013).

7

The two counts which Polakoff challenges are distinct because each is based on a separate occurrence. The first occurrence was alleged to have occurred "on or about April 17, 2019" (Count I) while the second count was based upon conduct alleged to have occurred "on or about April 19, 2019." The Court understands Polakoff to argue that that these two incidents are indivisible and, given his acquittal of the April 17th offense, Polakoff believes he cannot now be put in jeopardy for the same crime against the same victim alleged to have occurred on April 19, 2019. While this Court is not required to give deference to the Montana Supreme Court's ruling, its rationale is both reasonable and instructive. Polakoff cannot show that Count I and Count II are, in law and fact, the same offense.

In support of his double jeopardy argument, Polakoff points to the testimony of Dr. Fouts, who stated he had no way of knowing if E.M.'s two skull fractures were attributable to the same event. (Doc. 1 at 13-14.) While this is true, Dr. Fouts did acknowledge that E.M. had two major skull fractures in different locations. One was stellate, meaning the skull fractured in s "star-like" pattern and was positioned more posterior, while the other fracture was stepped off, meaning the bone was "actually pressed in on the other bone." (*See* Trans., Doc. 1-13 at 47; 393-394.) Dr. Fouts noted he had only seen one prior skull fracture as severe as E.M.'s and it was the result of abuse. (*Id.* at 394: 2-10.) Further, Dr. Fouts opined that the two fractures were at least from two different blows to E.M.'s head given

8

the location of the fractures. (*Id.* at 395:8-13.) Dr. Fouts did not believe it was medically plausible that either injury was caused from rolling off of a futon. (*Id.* at 395:21-24.) On cross-examination Dr. Fouts explained he could medically state that the mechanism of injury to E.M. was a "contusive blow to the head." (*Id.* at 407:13017.) He also acknowledged that he could not determine medically what caused the injury, doing so was not part of his job, and his role in treatment was to "[t]ake care of the baby." (*Id.* at 408:5-11.)

Dr. Laskey, one of E.M.'s treating physicians at the Children's Hospital in Salt Lake, described the severity of E.M.'s injuries and his two fractures. She explained that the complex linear fracture on the side of his head likely resulted from impact against a flat surface and required a relatively high amount of force. (*Id.* at 138; 549-550.) Given the amount of force required for this injury, she did not believe it would have resulted from falling off of a futon. (*Id.* at 137; 548: 6-12.) She stated that the more serious of the fractures, the posterior occipital stellate fracture, was so severe that once E.M. sustained the injury, it would have been "unambiguous" that something was wrong, that his condition would immediately get worse, and that the injury would be obvious. (*Id.* at 554: 11-18.) Dr. Laskey further explained that this occipital fracture would be almost instantly debilitating and that she did not believe it would be medically possible for a child with such an injury to go on unnoticed. (*Id.* at 155; 619: 10-17.) Further, Dr. Laskey explained

9

that fracture was not caused from impact against a flat surface, but rather something raised or pointed. (*Id.* at 143; 572:13-21.)

Based upon her experience and training, Dr. Laskey testified about what she believed to be the timing of E.M.'s injuries. Dr. Laskey noted that following the futon fall on April 17, a red mark and/or goose egg developed on E.M.'s forehead and he began vomiting. Prior to this incident, E.M. was normal. From that point moving forward, E.M. was persistently ill. (*Id.* at 136; 542:3-21; see also 147; 585:3-14.) Dr. Laskey explained, however, that E.M. was not critically ill until April 19, when he needed life-saving interventions to stay alive. (*Id.* at 147; 585-86.) That is, Dr. Laskey believed the more serious fracture, occurred on April 19. Dr. Laskey provided her medical opinion; she believed E.M. had symptoms and findings that suggested E.M. was re-injured on April 19, after an initial injury event and the failure to identify the first injury led to an individual having access to E.M. and causing the second injury. (*Id.* at 146; 584:17-21.) Notably, both during the futon fall on April 17 and immediately preceding the 9-1-1 call on April 19, E.M. was alone, albeit briefly, with Polakoff.

The basis under which the State charged Polakoff is consistent with the evidence presented, that that there were two separate assaults on E.M. The first assault was alleged to have occurred on April 17, 2019, and the second occurred on April 19, 2019. The Court does not find Polakoff's reliance upon the "on or about"

language contained in the Information[2] or his reliance on *United States v. Beardsley*, Cause No. 19-CR-133A, 2021 WL 2367735 (W.D.N.Y. Mar. 2, 2021), to be persuasive. Polakoff has not shown that the two offenses for which he has been charged are the same offense. The State of Montana alleged two separate and distinct acts against Polakoff and the evidence presented at trial supported the charges. Thus, the charges are not multiplicitous. *See Mancuso*, 718 F. 3d at 791. And while the jury acquitted Polakoff of Count I, double jeopardy principles are not offended by his retrial on Count II. *See Yeager*, 557 U.S. at 118.

Based upon a *de novo* review of the record, Polakoff has failed to show that his retrial would violate the Fifth Amendment prohibition against double jeopardy. Accordingly, relief under Section 2241 is inappropriate and there is no basis to warrant this Court's intervention in his state court proceedings. The petition will be denied.

## IV.   Certificate of Appealability

State prisoners seeking post-conviction relief under 28 U.S.C. § 2241 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability ("COA") from a district or circuit judge. 28 U.S.C. § 2253( s)(2); Wilson, 554 F. 3d at 824-25. A certificate of appealability may issue

---

[2] *See e.g.* (Doc. 1-3.)

only if petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Pursuant to this standard, this Court concludes Polakoff is not entitled to a certificate of appealability with respect to the claims raised in this petition. Accordingly, there are no close questions and reasonable jurists would find no basis to encourage further proceedings. A certificate of appealability is denied.

Based on the foregoing, the Court enters the following:

## ORDER

1. Polakoff's Petition (Doc. 1) is DENIED.

2. The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability is DENIED.

DATED this 9ᵗʰ day of December, 2022.

Susan P. Watters
United States District Court Judge

12